IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANTZCEAU HYPPOLITE,**<br><br>*Plaintiff,*<br><br>v.<br><br>**LONG ISLAND UNIVERSITY, et al.,**<br><br>*Defendants.* | Case No. 5:19-cv-02965-JDW |

**MEMORANDUM**

Frantzceau Hyppolite, proceeding *pro se*, filed this civil suit alleging that Kevin A. Stevens, P.C ("Stevens"), a law firm and debt collector, violated the Fair Debt Collection Practices Act by failing to verify his debt. The Court held a bench trial on March 9, 2021. After thorough consideration of the evidence presented at trial and relevant law, the Court makes the following findings of fact and conclusion of law pursuant to Fed. R. Civ. P. 52(a).

**I.    FINDINGS OF FACT**

**A.    Mr. Hyppolite's Verification Request**

Mr. Hyppolite lived in New York and attended Long Island University for some period of time. He concluded his studies at LIU in 2009. At that time, he had unpaid student debts that he owed the school. In 2012, Mr. Hyppolite moved to Bethlehem, Pennsylvania. In 2014, he moved to Allentown, Pennsylvania, and he has lived there ever since.

In 2015, LIU, represented by Stevens, sued Mr. Hyppolite seeking $13,995 plus interest. It filed the case in the New York Supreme Court for Kings County. LIU served Mr. Stevens at an address in Brooklyn. Mr. Hyppolite claims he did not receive service in that lawsuit. In 2016, LIU sought and obtained a default judgment against Mr. Hyppolite. It then sent Mr. Hyppolite a copy

of the judgment and discovery in aid of execution. It served all of that information at an address in Brooklyn, and Mr. Hyppolite apparently did not receive it.

Stevens apparently began to try to execute on the judgment for LIU. In early June 2019, while shopping, Mr. Hyppolite's pre-paid debit card was declined. Mr. Hyppolite called the card issuer and learned about the judgment against him in New York and that Stevens was trying to collect on the judgment.

On June 7, 2019, Mr. Hyppolite sent Stevens a letter by certified mail asking for "verification and validation of the debt . . . ." (Def. Ex. 1.) Stevens received that letter on June 10, 2019. (Pl. Ex. 3.) That same day, Stevens responded via email. In the body of the email, Stevens identified itself as "a debt collector. . . attempting to collect a debt." (Def. Ex. 1.) The email attached a default judgment affidavit from state court case against Mr. Hyppolite and Mr. Hyppolite's payment plan agreement with LIU. (*Id*.)

Mr. Hyppolite never saw Stevens' email. He did not expect a response by email because he sent his request by mail, and he suspects, but does not know for sure, that the response went into a spam folder. Mr. Hyppolite also called Stevens about the debt, and he spoke to Kevin Stevens, but Mr. Stevens hung up on him because Mr. Hyppolite did not know his account number.

Mr. Hyppolite alleges that because Stevens did not validate his debt, he could not make interest payments on his student loans. Mr. Hyppolite calculates that he suffered damages totaling $3,847.46.

B.   **Procedural History**

Mr. Hyppolite filed a complaint and an application to proceed *in forma pauperis* on July 5, 2019. The Court granted leave to proceed *in forma pauperis* and directed Mr. Hyppolite to file an amended complaint. He did so on July 29, 2019. In that complaint, he asserted claims against

LIU and "Kevin Stevens Law Offices." (ECF No. 6). The Court held an initial pretrial conference on July 16, 2020. During that conference, Mr. Hyppolite clarified that he was asserting a claim under the FDCPA against Stevens, not Mr. Stevens personally. (ECF No. 19.) LIU filed a motion to dismiss the case for lack of personal jurisdiction. The Court granted that motion on October 8, 2020.

On February 5, 2021, the Court held a telephone status conference. During that conference, both parties waived their right to a jury and consented to a bench trial via videoconference. The Court held a final pretrial conference on March 8, 2021. During that conference, Mr. Hyppolite clarified that he is pursuing two claims in the case: (a) Stevens violated the FDCPA when it did not serve him with the complaint in the New York lawsuit; and (b) Stevens violated the FDCPA when it did not respond to his verification request. Although Mr. Hyppolite's pleadings reference Stevens' efforts to freeze his bank account, Mr. Hyppolite told the Court that he was not pursuing a claim about those efforts to execute on the New York judgment. The Court held a bench trial via videoconference on March 9, 2021.

## II.     CONCLUSIONS OF LAW

"'To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the FDCPA; (2) that the 'debt' arose out of a transaction entered into primarily for personal, family, or household purposes; (3) that the defendant collecting the debt is a 'debt collector,' and (4) that the defendant violated, by act or omission, a provision of the FDCPA.'" *Pressley v. Capital One*, 415 F. Supp. 3d 509, 512-13 (E.D. Pa. 2019) (quoting *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 597 (E.D. Pa. 2014)). The evidence shows, and Stevens does not dispute, that Mr. Hyppolite's debt arose from a

transaction for personal purposes and that Stevens is a debt collector within the meaning of the FDCPA.

### A.     Service Of New York Law Suit

The Court explained to Mr. Hyppolite during the final pretrial conference that he could not challenge the New York court's entry of a default judgment. There are two reasons for that decision. *First*, no provision of the FDCPA regulates Stevens' efforts to serve process from the New York case on Mr. Hyppolite.  Mr. Hyppolite has not identified such a provision. The Court has conducted its own analysis and concludes that none applies.  The only provision that might apply is Section 1692f, which prohibits debt collectors from using "unfair or unconscionable means" to collect or attempt to collect any debt.  15 U.S.C. § 1692f.  But, having reviewed that provision, including the specific types of behavior listed as examples of unfair or unconscionable means, the Court concludes that it does not apply.

*Second*, courts must avoid disturbing another court's final judgment, even if that judgment is a default judgment. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008). *Budget Blinds* focused on two federal courts and invoked Federal Rule of Civil Procedure 60(b)(6).  But the comity concerns that motivated the decision in *Budget Blinds* is stronger in a case like this one, where a party asks a Court to open a state court's final judgment.  There might be extraordinary circumstances that would justify such an action, but this case does not present them.  If Mr. Hyppolite wants to seek relief from the judgment against him, he will have to do so in New York, not here.

### B.     Response To Validation Request

Section 1692g of the FDCPA requires debt collectors to disclose certain information to consumers about their debts within a specific time frame. 15 U.S.C. § 1692g(b). Specifically, "if

the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor," the FCRA requires debt collectors to cease collecting the debt until "a copy of such verification [of the debt] or [copy of a] judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Accordingly, to state a violation of section 1692g(b), a plaintiff must show that: "(1) he sent a writing to the debt collector disputing the debt and thereby triggered the verification requirements; (2) the debt collector's response did not satisfy the verification requirements; and (3) the debt collector thereafter engaged in post-dispute conduct that amounted to prohibited debt collection activity." *Scott v. Regulus Integrated Sols.*, No. 2:16-CV-389, 2016 WL 6776364, at *4 (W.D. Pa. Oct. 19, 2016) (citing other sources).

### 1.     Transmission of a writing disputing the debt

Mr. Hyppolite sent his verification letter, which disputes the debt.  Stevens suggested at trial that Mr. Hyppolite's letter requesting validation of the debt came too late because Stevens sent Mr. Hyppolite a letter notifying him of the debt at the beginning of Stevens' collection efforts. But Stevens has not provided a copy of that letter, and the Court declines to consider Mr. Stevens' testimony summarizing the letter. *See* Fed. R. Evid. 1002-1004 (best evidence rule requires copy of writing to prove its contents except in certain circumstances). Therefore, the Court concludes that Mr. Hyppolite satisfied the first element of a claim under Section 1692g(b).

### 2.     Satisfaction of verification requirements

Stevens did not satisfy the FDCPA's debt verification requirements. Stevens emailed Mr. Hyppolite information in response to his request. But Section 1692g provides that a debt collector satisfies the verification requirements only when required information "is **mailed** to the consumer

5

by the debt collector." 15 U.S.C. § 1692g(b) (emphasis added). The statute's plain language does not permit a debt collector to email information in response to a validation request. "It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

To determine whether statutory language is ambiguous, the Court must "read the statute in its ordinary and natural sense." *Id.* (quotation omitted). In doing so, the Court must take care to apply the ordinary meaning of the terms of the statute as they existed "at the time of its enactment." *Bostock*, 140 S. Ct. at 1738; *see also McGirt*, 140 S. Ct. at 2468 (in interpreting Congressional enactment, a court's task is to "ascertain and follow the original meaning of the law"). Courts "look to dictionary definitions to determine the ordinary meaning of a word." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 306 (3d Cir. Aug. 3, 2020) (quotation omitted). "A provision is ambiguous only where the disputed language is 'reasonably susceptible of different interpretations.'" *Philadelphia Newspapers*, 599 F.3d at 304 (same).

Because Congress passed the FDCPA in 1977, the Court must consider the ordinary meaning of the word "mailed" as it existed at that time. In 1977, "mailed" meant a "[m]ailing with appropriate address on envelope." Black's Law Dictionary 1104 (4th ed. 1968). More broadly, the word "mail" meant "[a]s applied to the post-office, the carriage of letters, whether applied to the bag into which they are transported, or any other means employed for their carriage and delivery **by public authority**. *Id.* (emphasis added). In practice, "to mail" meant to "properly prepare for transmission by the postal department." *Id*.

6

There is only one reading of Section 1692g(b): a debt collector must cease collecting the disputed debt until he "transmits by the postal department" verification information to the consumer. This reading is consistent with other provisions of the FDCPA. The statute defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C.A. § 1692a(2). Congress could have used this broader term in Section 1692g(b), but it chose not to do so. The Court will not undermine that decision. "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amended statutes outside the legislative process reserved for the people's representatives." *Bostock*, 140 S. Ct. at 1738. Sending verification information via email does not fulfill debt collector's obligation under the statute because the postal department does not transmit emails.

### 3. Prohibited debt collection activity

"[A] debt collector must 'cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer.'" *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013), *abrogated on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020)(quoting *Wilson v. Quadramed Corp.*, 225 F. 3d 250, 354 (3d Cir. 2000)). Stevens had to cease collection efforts against Mr. Hyppolite until it mailed verification information to Mr. Hyppolite.

There is no evidence that Stevens continued any collection efforts after Mr. Hyppolite requested verification. At trial, Mr. Hyppolite did not testify, nor did he elicit testimony from Mr. Stevens, that Mr. Stevens continued to collect on the debt. Rather, Mr. Hyppolite testified that Mr.

7

Stevens froze his bank account before Mr. Hyppolite requested debt verification. To the extent that Mr. Hyppolite argues that Mr. Stevens should have taken some affirmative action to "unfreeze" Mr. Hyppolite's bank account, nothing in the statute requires actions to undo prior collection efforts. The efforts just have to stop on a going-forward basis. Mr. Hyppolite has not proven this element of his claim.

### III. CONCLUSION

Because Mr. Hyppolite failed to establish that Stevens continued to collect the disputed debt, Mr. Hyppolite cannot establish a violation of the FDCPA. The Court will therefore enter judgment in favor of Stevens. An appropriate Order follows.

**BY THE COURT**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

March 11, 2021